(No. 20544.—

John F. Walsh, Plaintiff in Error, vs. The Industrial Commission *et al.*—(Ernest T. Johnson, Defendant in Error.)

*Opinion filed October 23, 1931.*

David D. Madden, for plaintiff in error.

Frank E. Maynard, for defendant in error.

Mr. Chief Justice Stone delivered the opinion of the court:

On June 24, 1929, Ernest T. Johnson filed his petition with the Industrial Commission against plaintiff in error and one Harry C. Jensen, the latter of whom was doing business as the Jensen Roofing Company, seeking an award because of injuries received by him on June 4, 1929. A hearing was had on November 29, 1929, by the arbitrator, who made an award in favor of the applicant. Plaintiff in error, Walsh, filed a petition for review by the Industrial Commission but did not present his record within the time required by the statute, and the decision of the arbitrator

became the decision of the Industrial Commission. The cause was reviewed on *certiorari* by the circuit court of Winnebago county and the award confirmed. The case is here on writ of error.

It is suggested in the record here that Johnson, the defendant in error, on the 17th day of August, 1930, died of the injuries sustained in the accident involved here, leaving his mother totally dependent upon him at the time of the injury and since that time.

The defense of plaintiff in error was and is that he is not liable under the act. There is but little dispute in the evidence. It shows that plaintiff in error was the owner in fee or had an equitable interest in eight or ten houses in the city of Rockford and that he was also engaged in the business of making short loans in the city of Rockford on real and chattel property. Harry C. Jensen was engaged by Walsh to repair the roof on a certain piece of property, and Johnson, the defendant in error, was engaged by Jensen at the work of repairing that roof when he fell to the ground, breaking his back and otherwise injuring him so that at the time of the hearing he was paralyzed from his waist down. The relation of plaintiff in error to the property being repaired at the time of Johnson's injury is shown by the following facts: On September 8, 1924, Bert J. Soper, and Mabel, his wife, entered into a written contract for the purchase of the property on which the repairing was being done at the time of the injury. It consisted of a lot and a two-story frame residence of seven rooms. On December 8, 1925, Walsh loaned to the Sopers $150, taking their promissory note therefor, payable at the rate of $10 per month, with interest at three and a half per cent per month. As security for this note he took an assignment of the contract to purchase held by the Sopers, and also a quit-claim deed from them conveying to him all their interest in the property covered by the contract of purchase. It appears that the Sopers made no payments to plaintiff

in error on the note, and on May 15, 1926, he by verbal agreement with Soper took charge of the property, collected rents, paid the taxes and made all necessary repairs. The payment of taxes and repairs was made by plaintiff in error out of his own funds or rents from the property. About June 1, 1929, plaintiff in error employed Jensen to repair the building as above indicated. Jensen carried no liability insurance, and it is sought to require payment of compensation by plaintiff in error under section 31 of the Compensation act.

Section 31 as amended in 1919 provides that "anyone engaging in any business or enterprise referred to in subsections 1 and 2 of section 3 of this act, who undertakes to do any work enumerated therein, shall be liable to pay compensation to his own immediate employees in accordance with the provisions of this act, and in addition thereto if he directly or indirectly engages any contractor, whether principal or sub-contractor to do any such work, he shall be liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor shall have insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this act, or guaranteed his liability to pay such compensation."

Section 3 and sub-section 1 referred to in section 31 are as follows:

"Sec. 3. The provisions of this act hereinafter following shall apply automatically and without election to * * * all employers and all their employees engaged in any department of the following enterprises or businesses which are declared to be extra-hazardous, namely:

."1. The erection, maintaining, removing, remodeling, altering or demolishing of any structure, except as provided in sub-paragraph 8 of this section."

Sub-section 2 and sub-paragraph 8 bear no relationship to the issue here considered. These sections and sub-sections

of the act apply to the occupations therein named as businesses—*i. e.,* sub-section 1 applies to the business of erecting, maintaining, removing, remodeling, altering or demolishing of any structure. *Halpin* v. *Industrial Com.* 319 Ill. 130; *Johnson Co.* v. *Industrial Com.* 306 id. 197; *Davis* v. *Industrial Com.* 297 id. 29; *Alabach* v. *Industrial Com.* 291 id. 338; *Storrs* v. *Industrial Com.* 285 id. 595.

Plaintiff in error's chief contention is that while he owned or was interested in ten buildings in the city of Rockford which he rented and repaired he was not engaged in the business of maintaining the structures. Standard lexicographers define "maintain" as "the act of holding or keeping in any particular state or condition." Such definition has been adopted by this court. (*Johnson* v. *Choate,* 284 Ill. 214.) The business, therefore, of maintaining a structure is the business of holding and keeping the same in repair. The term "business," in common parlance, means an employment which occupies a substantial portion of the time and attention of one engaged in it. As was held in *Alabach* v. *Industrial Com. supra,* and in *Uphoff* v. *Industrial Board,* 271 Ill. 312, the employer must be engaged in the occupation, enterprise or business of maintaining and repairing a structure, and this does not apply to maintaining or repairing a dwelling house when such is neither the occupation, enterprise or business of the owner. Nor does the building of a shed or other similar structure by or for a farmer come within the legislative intention. In *Storrs* v. *Industrial Com. supra,* the plaintiff in error was not engaged in any other business than the managing, maintaining and keeping in repair some twelve or fifteen buildings, most of which belonged to him. It was held that he was engaged in the business or occupation of maintaining buildings within the ordinary meaning of the term; that whether he was an owner or merely contracted to look after the buildings was of no consequence, so long as it was an occupation for which he was to receive compensation either

for his services or from the rents of the property. In *Davis* v. *Industrial Com. supra,* plaintiff in error was in the hardware business but he owned the apartment building where the accident to an employee occurred, which he rented at a profit, and likewise owned other buildings which he also rented. It was there held that while he was engaged in the hardware business the evidence also showed that he owned and kept in repair other buildings for the purpose of rental for income. It was held in *Vaughan's Seed Store* v. *Simonini,* 275 Ill. 477, that one may be engaged in more than one kind of business, one of which is not extra-hazardous or within the Workmen's Compensation act unless by election, and another within the act without an election because it is extra-hazardous.

The line of demarcation between maintaining a structure as an incident rather than as a business, and the business of maintaining a structure, is not readily defined, but we are of the opinion that a safe rule is, that where one maintains buildings or structures for profit, whether that profit be as compensation for his services or by way of rentals received, and such maintenance requires a substantial portion of his time and attention, he must be said to be engaged in the business of maintaining a structure within the contemplation of the Workmen's Compensation act. In this case it is not contended that plaintiff in error did not own a substantial interest in the building under repair at the time of the accident, and whether he owned it outright or was maintaining it for Soper is not material, where it is shown, as here, that his relation to and supervision over the property were for his own compensation or benefit. The distinction between this case and other cases previously considered by this court, such as *Davis* v. *Industrial Com. supra, Rogalski* v. *Industrial Com.* 342 Ill. 37, and *Storrs* v. *Industrial Com. supra,* is not discernible. We are of the opinion, therefore, that the record shows that plaintiff in error was engaged in the business of maintaining a

structure. It is not denied that Jensen had no insurance and gave no other guaranty against payments of compensation in cases of injury.

The judgment of the circuit court was right and is affirmed.                                   *Judgment affirmed.*